UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID DICKENS, | ) | CASE NO: 4:17-CV-00642-ALM-KPJ |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | Plano, Texas |
| | ) | |
| J.G. WENTWORTH HOME LENDING, LLC, | ) | Wednesday, January 31, 2018 |
| | ) | (1:46 p.m. to 2:10 p.m.) |
| | ) | |
| Defendant. | ) | |

ORAL ARGUMENTS ON MOTION NOTICE OF POTENTIAL
PLAINTIFFS (DKT.28) CLASS CERTIFICATION HEARING

BEFORE THE HONORABLE KIMBERLY C. PRIEST JOHNSON,
UNITED STATES MAGISTRATE JUDGE

Appearances:          See Next Page

Court Reporter:       Digital Recording - Plano 108

Courtroom Deputy:     Toya McEwen

Transcriber:          Exceptional Reporting Services, Inc.
                      P.O. Box 18668
                      Corpus Christi, TX 78480-8668
                      361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**

| | |
|---|---|
| Plaintiff: | CHRIS R. MILTENBERGER, ESQ.<br>Law Office of Chris R. Miltenberger, PLLC<br>1340 N. White Chapel Blvd, Suite 100<br>Southlake, TX 76092 |
| Defendant: | COLIN D. DOUGHERTY, ESQ.<br>Fox Rothschild, LLP - Blue Bell PA<br>P. O. Box 3001<br>Blue Bell, PA 19422-3001<br><br>BRIAN A. BERKLEY, ESQ.<br>Fox Rothschild, LLP - Philadelphia<br>2000 Market Street, 20th Floor<br>Philadelphia, PA 19103 |
| Also Present: | Jeremy Martin, Representative |

1          **Plano, Texas; Wednesday, January 31, 2018; 1:46 p.m.**

2                              **(Call to Order)**

3          **THE COURT:**  We're here in the matter of 4:17-cv-642,

4    David Dickens versus J.G. Wentworth Home Lending, LLC.  Can we

5    have appearances for the record, please.

6          **MR. MILTENBERGER:**  Chris Miltenberger for Plaintiff.

7          **THE COURT:**  Good afternoon.

8          **MR. DOUGHERTY:**  Good afternoon, your Honor.  Colin

9    Dougherty on behalf of the defendant.  I'm joined by my

10   colleague, Brian Berkley.  And our client is represented by

11   general counsel, Jeremy Martin.

12         **THE COURT:**  Good afternoon.

13         **MR. DOUGHERTY:**  Good afternoon, your Honor.

14         **THE COURT:**  All right.  You-all can be seated.  Let

15   me talk to you a minute and then I'll hear from you.

16         I've read the briefing.  And if I am correct, I think

17   Plaintiff's counsel changed the definition of the class,

18   essentially, in the reply -- which I agree is appropriate.  And

19   so at this stage it seems to me that the only issue at the

20   notice stage is whether the employees or loan officers in a

21   call center have different jobs throughout the nation.  I don't

22   think there's any other issue.

23         And I will say, I know that Defendants have raised a

24   number of substantive defenses; in particular, certain

25   exceptions that do exist under the FLSA.  And I'll also just

1  say, I noted that your briefing was -- have lots of cites from
2  the Southern District of Texas because they are a little bit
3  different and handle these proceedings a little bit differently
4  than, frankly, the other three districts in Texas but we don't
5  follow the Southern District of Texas precedent.  They
6  typically consider more merit-based arguments at the notice
7  stage than the other district courts in Texas.  So with that
8  said, while I appreciate that those are defenses that you will
9  raise, today is not the proper time for those to be considered
10 and so I don't need to hear argument on them today.
11              It seems to me that an appropriate conditional
12 certification class makes sense, as Plaintiffs have proposed,
13 with respect to loan officers in call centers.  So the limited
14 issue that I would like to hear from you on -- I think,
15 Counsel, you raised the argument that the call centers are
16 different throughout the nation but I didn't really see any
17 evidence as to how, or really even argument as to how.  So I
18 want you to speak to that first.  And then, Mr. Miltenberger,
19 I'll let you respond.  And then after that we can talk about
20 notice.
21              Mr. Miltenberger, the notice that you submitted I
22 think was drafted on the initial definition class definition.
23 And I don't -- at least I didn't see a revised notice.  I think
24 it would need to be revised based on the limited class,
25 correct?

1          **MR. MILTENBERGER:**  That's correct.

2          **THE COURT:**  Okay.

3          **MR. MILTENBERGER:**  I don't think I've seen anything
4   in revising it.

5          **THE COURT:**  All right.  Well, we'll talk about that
6   after -- let's try to resolve this issue and then we can get to
7   the issue of notice.

8          So, Counsel, I'll hear from you first on that.

9          **MR. DOUGHERTY:**  Good afternoon, your Honor.  Colin
10  Dougherty on behalf of J.G. Wentworth.

11         Your Honor, I think though -- I think the point you
12  raised is potentially resolved the issue.  So as you point out,
13  Defendants didn't put in evidence that these other call centers
14  are different.  However, it's not Defendant's burden to put in
15  evidence that they're different; it's Plaintiff's burden to
16  show that they're the same.  And in this case, we're only aware
17  of three of the six call centers because Defendants identified
18  them.  Plaintiffs have put together affidavits from the named
19  plaintiff, Mr. Dickens, and three other individuals: two that
20  have attempted to opt in and one individual who has said he
21  doesn't want to participate.  They come from Troy Michigan, two
22  here from Plano, and one from Boca Raton, Florida.  There is
23  not one shred of evidence offered by Plaintiffs to support that
24  the work in any other location is the same as the experience
25  that these four individuals allege to have.  Quite frankly,

1   there's no actual evidence that these four individuals offer
2   that even the people they work with are the same.  What they do
3   say in their affidavit is that they were on a call, and that
4   they heard people, and that they signed this contract, and that
5   they believe that others signed a similar contract, and that
6   they believe others are paid the same way.  But we don't have a
7   parade of additional declarations from the other three call
8   centers or multiple declarations from the same call center.
9   What we have are cookie-cutter declarations that are full of
10  conclusions and full of assumptions.  And while I certainly
11  understand that cases here decided by, for example, Judge
12  Mazzant have found what we would consider a lower standard or a
13  lower bar to get over, that there are cases -- there's the Tran
14  case (phonetic) out of the Southern District of California.
15  There are other cases that your Honor points to in the Southern
16  District of Texas that require more and do put the burden on
17  the plaintiff to -- while again, we understand that -- you know
18  and Plaintiff has pointed out -- that it is a lenient standard,
19  it's not no standard.  They have to marshal facts that show
20  that what these individuals were doing on a daily basis --
21  which included working overtime that was uncompensated -- and
22  they have not done that and that is their burden to do so.  And
23  while we -- I understand your Honor's point and I won't burden
24  the court with argument about the defenses, other than to say
25  we believe that that approach by some of those courts is the

1 appropriate one in these defenses -- would also preclude
2 certification.
3     **THE COURT:** Well, let me ask you a couple of
4 questions. And again, I think at some point some of the
5 defenses that you raise will be appropriate and the court will
6 consider them but that's not a close call in this court. We --
7 and it's not just Judge Mazzant, frankly, it's the courts in
8 the Eastern District don't -- I mean, we clearly follow the
9 two-step *Lusardi* analysis and the first step is notice. And
10 frankly, the reason why it's called "notice" -- and it's a
11 lenient standard -- is because Plaintiff has limited
12 information. And they're not required to have declarations and
13 opt-in plaintiffs from every single location to include that
14 location in a conditional class.
15     So, you know, Plaintiff has I think rightfully agreed
16 to limit their class to loan officers in call centers. With
17 the declarations that you provided, there's nothing in those
18 declarations that state that call centers were paid differently
19 depending on where they were in the nation. I understand -- I
20 think I recall in one of the declarations they talked about
21 each employee having their own individual employment agreement.
22 But there was a general comp policy that they'd either be given
23 the guaranteed wage or commission and so -- and the
24 interpretation of that can be different and it is. But I don't
25 see anything to suggest that loan officers working in call

1   centers -- and they don't have to be exactly the same; they
2   have to have generally the same job description -- and I just
3   don't see anything suggesting that they don't have generally
4   the same job description and they're not governed by this
5   general company pay policy.  But I want you to tell me if I'm
6   wrong.
7           **MR. DOUGHERTY:**  Well, I mean, if you look at it from
8   30,000 feet and say, yes, they're either paid commission or the
9   guaranteed wage, I believe that's accurate but the issue is on
10  the ground.  On the ground is where they're paid by their
11  individual contract which can vary.  On the ground is where
12  they have different responsibilities and different conduct,
13  including some of them supervising or being a team lead and
14  they're in the call centers; they're not just in the non-call
15  center locations.
16          **THE COURT:**  Right.  But that gets to the exemptions:
17  the supervisory exemption, for example, or the executive
18  exemption or the sales exemption, outside sales exemption.  All
19  of those would fall under specific exemptions that will be
20  considered at the merit stage.  So it sounds like you're not
21  jumping to agreeing but you are conceding that generally the
22  loan officers in the call centers were subject to the same pay
23  policy and generally had the same job description, correct?
24          **MR. DOUGHERTY:**  Well, again, I would say that, yes,
25  they are subject -- from 30,000 feet they are subject to a

1  guaranteed minimum pay or the commission.  They would have the
2  same job description in the sense that they are classified as
3  loan officers but I think on the day-to-day basis, again, as
4  our briefs point out, they can have varied and individualized
5  experiences.
6              **THE COURT:**  Okay.  All right.  Thank you.
7              Mr. Miltenberger, do you have anything else to add?
8              **MR. MILTENBERGER:**  I don't believe so, your Honor,
9  other than the fact that if there are some people that have
10 different jobs then they probably won't opt into it if they're
11 a supervisor or they're whatever.  They can make that decision
12 and as you say, the courts can look, if they do opt in, they
13 can look at it at that time what they're job and what their
14 duties may be.
15             **THE COURT:**  Yeah.  All right.  Thank you.
16             I'm just going to tell you that I think it's
17 appropriate at this stage in the case for the class, the
18 conditional certification class limited to loan officers in
19 call centers.  And so as to the issue of notice, what I think
20 probably makes the most sense is for counsel to try to work
21 together unless you just think you can't.  You-all are both
22 looking at me like that's not possible.  No?
23             **MR. DOUGHERTY:**  That's fine, your Honor.
24             **THE COURT:**  Well, and the reason why I say that is, I
25 didn't see any -- I know we had the issue of briefing but in

1    your response and surreply, I don't think you ever addressed

2    the issue of notice, correct?

3            **MR. DOUGHERTY:** We did put in our objections, similar

4    to although they were more in a list form as opposed to --

5            **THE COURT:** All right. I missed that.

6            **MR. DOUGHERTY:** But we're happy to work with

7    Mr. Miltenberger and meet and confer on the notice. And if

8    there's -- minimize any disagreements that there may be.

9            **THE COURT:** Let me -- okay. And let me just say a

10   couple things and maybe this will help.

11           The notice proposed by Plaintiff is a notice that has

12   been used by the court. So unless there is a very valid

13   objection specific to this case, this notice has already been

14   approved. And so while the -- I think it needs to be refined a

15   little bit and tailored to the more limited class, I'm going to

16   give you a limited amount of time to do it because we need to

17   get -- go ahead and get the notice time period going.

18           I have a scheduling order that I can issue in terms

19   of -- I'm assuming you're going to need addresses from Defense

20   Counsel.

21           **MR. MILTENBERGER:** Yes, ma'am.

22           **THE COURT:** So in terms of time for you to get those

23   and then a notice time period, I know you're asking for 60

24   days. I typically don't do 60 days for email.

25           **MR. MILTENBERGER:** Forty five days is fine.

1       **THE COURT:** That's typically what I do. I typically
2 will do 45 days. I think that's more reasonable. And I
3 typically only do email. I think you asked for both mail and
4 email. Do you need both mail and email?
5       **MR. MILTENBERGER:** Well --
6       **THE COURT:** I mean, just in this day and age I think
7 email's sufficient.
8       **MR. MILTENBERGER:** It is but what I would like is for
9 them to give me the mailing address and email. I'll probably
10 send out emails. If we get bounced back then maybe I'll send
11 by mail but email is probably the best but traditionally I
12 would like to have regular mailing addresses as well.
13       **THE COURT:** And my only concern with doing both is
14 I'm trying to balance between not bombarding a potential opt-in
15 plaintiff with information. So if we can have -- if you-all
16 can do this by agreement, just that an email will be sent --
17 and then if there's a bounce-back that you'll mail the notice,
18 I would be fine with that.
19       **MR. DOUGHERTY:** Your Honor, we don't have work
20 emails, we don't have home emails for the people and --
21       **THE COURT:** So the people that are no longer with you
22 you don't have.
23       **MR. DOUGHERTY:** We don't have -- we have their former
24 work email. They're obviously not employed. We don't have a
25 home email and we certainly would prefer not these going to

1  work emails.  So we would prefer, as we had originally pointed

2  out, just -- just mail.

3        **THE COURT:**  You don't have any sort of -- when

4  someone becomes an employee, them give you their personal

5  information?

6        **MR. DOUGHERTY:**  We have -- I mean, we have HR files

7  but email is not a required -- is not a required field that's

8  collected.  I'm not going to say we don't have a home email for

9  someone or some of the people but it's not a required field as

10 I understand that's collected.

11       **MR. MILTENBERGER:**  What I normally suggest is they

12 look at the employment application because almost all employees

13 in an application -- or they usually apply online or send an

14 application -- have an email address --

15       **THE COURT:**  Yeah.

16       **MR. MILTENBERGER:**  -- that they seem to accompany.

17       **THE COURT:**  Okay.  Let --

18       **MR. DOUGHERTY:**  We can readily -- I'm sorry, your

19 Honor.  We can readily obviously get home addresses or last

20 known home addresses for former employees.  We're now talking

21 about mining potentially years old documents that could have

22 changed in the hopes that it has an email address.

23       **THE COURT:**  I would recommend -- and again, I'm just

24 telling you my thoughts now so that it will make an agreement

25 easier.

1        It seems to me that it would make the most sense for
2   you to give Plaintiff's counsel what you've got.  And if you've
3   got an email address, a personal email address, give it to
4   them; if you don't, give them the home address.  If you've got
5   both, give them both.  If you've got an email address, you'll
6   email.  If you get a bounce-back -- and not mail but you've got
7   that mailing address in the event you get a bounce-back and
8   send -- and then you can send the mail.  Does that make sense?
9        **MR. MILTENBERGER:**  It does, your Honor.
10       **THE COURT:**  Because the problem is, if you do this
11  piecemeal, their notice is going to be extended until the last
12  day you're giving them information.  And it'll just be chaotic.
13  It's better for you to give them the information that you've
14  got and -- But you-all talk about it, as well as the substance
15  of the notice, and then -- how much time do you think you need
16  to do that?
17       **MR. MILTENBERGER:**  It won't take long to email them
18  out once we get the --
19       **THE COURT:**  No, no, I mean for you-all --
20       **MR. MILTENBERGER:**  Oh.
21       **THE COURT:**  -- to confer and know whether you have an
22  agreement about the logistics, as well as the substance of the
23  notice or not.
24       **MR. MILTENBERGER:**  I would say we ought to be able to
25  get back with you by Monday, by the end of close of business on

1 Monday.

2 **MR. DOUGHERTY:** I would agree with that, your Honor.

3 **THE COURT:** Okay. All right. Let's do that. And if
4 you-all will just notify the court by Monday. And if there are
5 disagreements, you can informally let Mr. Garcia know and I'll
6 get on the phone with you --

7 **MR. DOUGHERTY:** Yes, your Honor.

8 **THE COURT:** -- so you don't have to come back.

9 **MR. MILTENBERGER:** The only one issue I would raise
10 is, we did request that with email, instead of having somebody
11 print something out, that we send it by Docu-Sign as well so
12 that they electronically can sign it. I don't know what your
13 feeling is on electronic signature. Other courts have gladly
14 accepted it. We sign everything electronically. The whole
15 world signs electronically.

16 **THE COURT:** Yeah. Well do you have any objection to
17 that?

18 **MR. DOUGHERTY:** We do, your Honor. I mean, the
19 courts -- we sign things electronically but you know our bar
20 license is on the line for that. We would certainly prefer
21 that it is signed by hand and sent back, which is why we prefer
22 U.S. Mail because then they have the written paper and can
23 return it.

24 **MR. MILTENBERGER:** Your Honor, if they certainly
25 don't believe somebody signed it or we submitted something

1  fraudulently, they can question -- question them at some point
2  in time but that's just a bar to --
3           **THE COURT:**  Yeah, I'll -- I'm going to allow email if
4  it's available and I'm going to allow Docu-sign.  I mean, if
5  he's really going to be willing to put his bar license on the
6  line, I don't think that that's going to happen.  So I think
7  Docu-Sign's appropriate.
8           Anything else?
9           **MR. DOUGHERTY:**  I think the one other issue we had
10 previously is we requested that the notice include notice
11 language that indicates that participants may have to
12 participate in the discovery process.  I believe Plaintiff's
13 counsel objected to that language.  We found numerous cases
14 that support that type of language and it's a may, not shall or
15 have to.
16          **THE COURT:**  Okay.  Is the document you're talking
17 about what I ended up saying you couldn't file?
18          **MR. DOUGHERTY:**  Yes, your Honor.
19          **THE COURT:**  Okay.  I'm just -- because I haven't read
20 it so --
21          **MR. DOUGHERTY:**  No, I understand -- I apologize.
22          **THE COURT:**  What did you ask for?
23          **MR. DOUGHERTY:**  The proposed notice -- I understand
24 that it was approved by this court -- did not include a line in
25 it informing potential opt-ins that by participating in the

1  case, they may also have to participate in the discovery

2  process.  I believe Mr. Miltenberger objected to the inclusion

3  of that and that is not in that previously --

4          **THE COURT:**  Okay.

5          **MR. DOUGHERTY:**  -- approved notice and that is

6  something we would like to include.

7          **MR. MILTENBERGER:**  This court's notices don't

8  typically include that.  I copied it almost verbatim from

9  (indisc.) Brazille's (phonetic).  My opinion on that is it's a

10 chilling effect for them to sign up.  If they sign up and

11 happen to be one that has to give a deposition and they don't

12 want to be -- give a deposition or want to participate, they

13 can withdraw and not participate.  But to tell them ahead of

14 time, to threaten them that out of 400 people you may have to

15 come and give a deposition and may have to do so-and-so, I

16 think is the reason this court hadn't included those in.

17         **THE COURT:**  Well, I've never been asked.  I don't

18 know if other judges have considered that issue.  It's not

19 something that I've ever been asked to include and it hasn't

20 been in any of the notices that I've approved.  But with that

21 said -- because I've never been asked, I've never really

22 considered the issue -- it does seem to me that really the only

23 point of saying that would be to frighten people into signing

24 up.  Can you articulate another reason?

25         **MR. DOUGHERTY:**  Certainly, your Honor, because we've

1   -- the reason we want to include it is because in our
2   experience, then what we get in fights in the future about
3   whether or not these individuals are actually plaintiffs or
4   representatives, or about Rule 23 standard and -- which is why
5   we want to include that language so that anyone knows that they
6   opt in, is a different standard.  Particularly here.  And the
7   Fifth Circuit has held that the 216 standard is different than
8   the Rule 23 standard.  They are actually plaintiffs and
9   therefore have to participate like actual plaintiffs.
10              **THE COURT:**  Right.  All right.  I'll have to look at
11  that.  Again, it's something I've not considered and have not
12  looked at any case law on if there is.  So I'll have to think
13  about that.
14              **MR. DOUGHERTY:**  We can brief it, your Honor.  If we
15  can't come to an agreement, we could file a letter brief on it
16  if that makes it easier.
17              **THE COURT:**  I can -- I can get -- if it's in what
18  you've already submitted, I can look at it.
19              **MR. DOUGHERTY:**  Yes, your Honor.
20              **THE COURT:**  All right.  Is there any other issue that
21  you think might be not resolvable?
22              **MR. MILTENBERGER:**  The only one may be that they
23  asked that we also include a provision that a plaintiff may be
24  liable for cost if they lose and have costs attributed against
25  them.

```
 1           THE COURT:  That, I don't think is proper.
 2           MR. MILTENBERGER:  Thank you.
 3           THE COURT:  Yeah.  That, I don't think is proper.
 4      The other issue, I don't think it's necessarily
 5 prejudicial and it is true, I don't want to think about it a
 6 little bit.  All right?
 7           MR. MILTENBERGER:  Thank you, your Honor.
 8           MR. DOUGHERTY:  Thank you, your Honor.
 9           THE COURT:  All right.  We'll stand adjourned in your
10 case.
11           MR. DOUGHERTY:  Thank you.
12      (Proceeding adjourned at 2:10 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    February 2, 2018_

           **TONI HUDSON, TRANSCRIBER**